UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| TEXAS REGIONAL LANDFILL COMPANY, LP, WASTE CONNECTIONS BAYOU INC., and WASTE CONNECTIONS OF LOUISIANA, INC. | * * * * * | CIVIL ACTION NO. 5:26-cv-329 |
| VERSUS | * * | DISTRICT JUDGE HICKS |
| CITY OF SHREVEPORT | * | MAGISTRATE JUDGE HORNSBY |

### CITY OF SHREVEPORT'S
### MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)
### AND INCORPORATED MEMORANDUM

NOW INTO COURT, through undersigned counsel, comes the Defendant, the City of Shreveport (hereinafter "Defendant" or "COS"), who hereby moves to dismiss Plaintiffs' claim against it pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.   Introduction**

On February 4, 2026, Plaintiffs filed a Complaint alleging that COS Ordinance 74:52.1 ("Flow Control Ordinance") is unconstitutional and in violation of the dormant Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3.  Plaintiffs admit that the Woolworth Road Landfill ("Woolworth") is owned by COS, but nevertheless assert that Woolworth is a "private" landfill because COS contracts with a private entity, Republic Services ("Republic"), to perform some of the functions of Woolworth.  COS respectfully submits that Plaintiffs' allegations are insufficient to maintain this cause of action, and that such claim should be dismissed with prejudice.

Specifically, COS shows that the United Sates Supreme Court in *United Haulers Association, Inc. v. Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. 330, 127 S. Ct. 1789, 167 L.Ed.2d 655 (2007), addressed the constitutionality of publicly owned landfills operated by private entities. The Supreme Court specifically held that ordinances requiring waste to be disposed of at a publicly owned landfill, that is operated by private entities, do not violate the dormant Commerce Clause of the United States Constitution. Consequently, Plaintiffs' allegations fail to demonstrate a right to relief as a matter of law, and all claims of Plaintiffs should be dismissed with prejudice.

## II.     Statement of Facts.

COS owns Woolworth Road Landfill. In 2003, COS entered a Sanitary Landfill Services and Recycling Agreement with BFI Waste Systems of Louisiana, Inc. (hereinafter, "Republic")[1] to operate some of the functions of Woolworth. Republic is typically responsible for general operational and maintenance duties, including receiving and processing waste, making repairs, staffing the receiving, and processing of the waste. COS retained broad oversight rights, including the right to access the facilities, to inspect and monitor the contractor's performance, and the right to take corrective action if necessary. COS sets the "tipping fees" charged to haulers depositing waste at the facilities, staffs the "scale houses" where in- and out-bound tonnage data is recorded, maintains the books including invoicing and receiving accounts receivables, is responsible for all permitting issues with the state and federal authorities, and is responsible for all environmental regulatory fines.

In 1993, COS enacted Ordinance 74:52.1, which read, in relevant part:

(a) Except as provided in subsections (b), (c), (d), and (e) of this section, all persons required to obtain a permit from the city under section 74-53 **shall dispose of all solid waste and rubbish collected** pursuant to this section, or an equivalent amount

---

[1] BFI is now operating as Republic Services. *See* Doc. 1, ¶ 1.

    as determined by the director of operational services, **only at the Woolworth Road Landfill.**

(b) Section 74-52.1(a) shall not apply to any solid waste and rubbish which is being collected for the specific purpose of resource recovery as that term is defined by the State of Louisiana Department of Environmental Quality, Office of Solid and Hazardous Waste, Solid Waste Division.

(c) Section 74-52.1(a) shall not apply to any building materials disposed of at any construction and demolition facility permitted by the state.

(d) Section 74-52.1(a) shall not apply to any large tree limbs or tree trunks exceeding four feet in length and four inches in diameter disposed of at any wood waste facility permitted by the state

(e) **Section 74-52.1(a) shall not apply to any solid waste and rubbish disposed of outside of the State of Louisiana.**

(Emphasis added).

In January 2024, COS amended Ord. 74.52.1 to remove the "out of state" exemption. The amendment became effective on October 19, 2025. *See* Doc. 1, ¶¶ 17, 19.

Plaintiffs are private haulers who dispose of the solid waste collected in the City of Shreveport outside the State of Louisiana, On February 4, 2026, after COS began enforcing the new amendment and requiring them to dispose of solid waste at the Woolworth Road Landfill, filed a Complaint seeking a declaratory judgment declaring amended Ord. 74:52.1 unconstitutional and in violation of the dormant Commerce Clause of the United States Constitution. For the reasons set forth herein, Plaintiffs' claims are without merit and should be dismissed.

**III.**     **Standard of Review.**

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall*

3

*D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), citing *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555, citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), citing *Twombly*, 127 S.Ct. at 1974); *see also, Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, *14 (S.D. Tex.). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Twombly*, 550 U.S. at 555, 570.

Dismissal under Rule 12(b)(6) is also "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom*. *Cloud v. United States*, 536 U.S. 960 (2002), cited for that proposition in *Baisden v. I'm Ready Productions*, No. Civ. A. H-080451, 2008 WL 2118170, *2

(S.D.Tex.). Plaintiffs' do not state a legally cognizable claim in that the Supreme Court determined in *United Haulers* that ordinances requiring waste to be disposed of at publicly owned and privately operated landfills do NOT violate the dormant Commerce Clause of the United States Constitution.

**IV.  *United Haulers* vest the City of Shreveport with the authority to regulate the collections and disposal of solid waste within its jurisdiction.**

In *United Haulers Association, Inc. v. Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. 330, 127 S.Ct. 1789, 167 L.Ed.2d 655 (2007), the United States Supreme Court recognized local government's "vital role" in waste management and the necessity to enact ordinances that provide a "convenient and effective way to finance" the waste disposal services. "Unlike private enterprise, government is vested with the responsibility of protecting the health, safety and welfare of its citizens." *Id.*, 50 U.S. at 342.

The Supreme Court expounded upon the importance of local government's role in waste management by stating:

> We should be particularly hesitant to interfere with the Counties' efforts under the guise of the Commerce Clause because "[w]aste disposal is both typically and traditionally a local government function." 261 F.3d, at 264 (case below) (Calabresi, J., concurring); see *USA Recycling, Inc. v. Babylon*, 66 F.3d 1272, 1275 (C.A.2 1995) ("For ninety years, it has been settled law that garbage collection and disposal is a core function of local government in the United States"); M. Melosi, Garbage in the Cities: Refuse, Reform, and the Environment, 1880–1980, pp. 153–155 (1981). Congress itself has recognized local government's vital role in waste management, making clear that "collection and disposal of solid wastes should continue to be primarily the function of State, regional, and local agencies."

*Id.* at 344.

Recognizing the need for local government to regulate "collection and disposal of waste," the U.S. Supreme Court specifically authorized municipalities to enact flow control ordinances

5

which require all waste collected within its jurisdiction to be disposed at the public landfill, and which allow the municipality to collect "tipping fees" to finance the operating and maintenance cost of the waste facilities. *United Haulers,* 550 U.S. 330. The United States Court of Appeal for the Third Circuit has also recognized the importance of flow control ordinances:

> Flow control ordinances…create a system in which waste haulers are licensed by the municipality and are directed to take the waste collected to the landfills that have been designated by the county. **By conditioning** the haulers' licenses on their compliance, local governments can assure a certain minimum revenue at the designated sites. Flow control both guarantees that a certain volume will be deposited and enables the operators of the designated landfill to collect a "tipping fee" high enough to cover the cost of processing…
>
> …[F]low control ordinances have been crucial to the financial viability of these facilities…

*Harvey & Harvey, Inc. v. Cty. of Chester,* 68 F.3d 788, 792 (3rd Cir. 1995) (emphasis added).

## V.     Shreveport's Regulatory Scheme.

Shreveport Code of Ordinances art. 74-53(a) provides that "[a]ny person who collects solid waste from any place or business for hire within the corporate limits of the city or hauls any waste to a city-owned disposal facility **shall** be required to obtain a permit from the city prior to conducting such operations within the city." (Emphasis added). As amended, Shreveport Code of Ordinances Section 74-52.1 requires that, with certain exceptions not applicable to this matter, "all persons required to obtain a permit from the city under Section 74-53 **shall** dispose of all solid waste and rubbish collected...**only** at the Woolworth Road Landfill." (Emphasis added).

Shreveport's regulatory scheme which requires waste haulers to obtain a permit and dispose of solid waste collected within the city limits at the Woolworth landfill is vital to financing the operation of waste collection services within the City, an operation essential to the City's responsibility of protecting the health, safety, and welfare of its citizens. *See supra.*

### VI. The United States Supreme Court has ruled that ordinances such as COS Ordinance 74:52.1 do not violate the dormant Commerce Clause.

Plaintiffs' sole claim is that the COS Ordinance 74:52.1 violates the dormant Commerce Clause of the Constitution because it "compels disposal of all [waste collected within the City of Shreveport] at the privately run Republic Woolworth Landfill." (Doc. 1, ¶ 1) (emphasis added). The City denies that Republic Woolworth Landfill is "privately run," but that issue of whether Woolworth is publicly or privately operated is irrelevant. Courts have consistently recognized that *ownership*, not operations, is all that is required.

For example, in *C&A Carbone, Inc. v. Cty. of Rockland,* 2014 WL 1202699 (S.D.N.Y. 3/24/14) ("*Carbone II*"), the district court addressed the issue of whether *United Haulers* required both public ownership and public operation of the designated landfill in order to satisfy the dormant Commerce Clause, or if public ownership alone was sufficient. The court concluded "that public ownership alone suffices," and in doing so, the court recognized that one of the landfills at issue in *United Haulers* was operated by a private company *Id*. at *7-8.

Similarly, in a case involving a sister company to Waste Connections Bayou, *Waste Connections of Kansas. v. City of Bel Aire, Ks,* 191 F. Supp2d 1238, 1246 (D. Kan. 2002), the district court explicitly recognized that "a City may hire a private entity to provide needed municipal services without the constraints of the dormant Commerce Clause," including for "the collection of garbage."

Plaintiffs admit the City owns Woolworth, *see* Doc. 1, ¶ 13, and ownership of the landfill, not management, is the **"determinative"** factor. *See C&A Carbone, supra,* 2014 WL 1202699, at *7, citing *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.,* 261 F.3d 245, 258 (2nd Cir. 2001)*; see also, USA Recycling, Inc. v. Town of Babylon,* 66 F.3d 1272, 1275 (2nd Cir.1995), *cert. denied,* 517 U.S. 1135, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996), (the Second

Circuit rejected the plaintiffs' arguments that Babylon's hiring of private companies to operate its collections and disposal, discriminated against, or imposed an undue burden on, interstate commerce in violation of the dormant Commerce Clause); *Bennett Elec. Co. v. Village of Miami Shores*, 11 F.Supp.2d 1348 (S.D. Fla. 1998).

The law is well established that private entities operating publicly owned landfills do not violate the dormant Commerce Clause of the United States Constitution, and there is simply no authority that would entitle Plaintiffs a right to relief in this matter.

## CONCLUSION

Considering the well-established law concerning publicly owned and privately operated landfill, Plaintiffs' have failed to state a legally cognizable claim upon which relief may be granted.

WHEREFORE, the City of Shreveport prays that this Motion to Dismiss be granted, and that this Honorable Court dismiss Plaintiffs' claims with prejudice, at Plaintiffs' cost.

Respectfully submitted,

KENNETH R. ANTEE, JR. APLC

BY: /s/ *Kenneth R. Antee, Jr.*
    Kenneth R. Antee, Jr/
    9335 Ellerbe Rd.
    Shreveport, La 71106
    Phone: (318)865-9253
    Fax: (318)865-9253
    ken@anteelaw.com

CARMOUCHE, BOKENFOHR, BUCKLE & DAY

BY: */s/ Nichole M. Buckle*
    Nichole M. Buckle, Bar No. 32113
    One Bellemead Center
    6425 Youree Drive, Suite 380
    Shreveport, Louisiana 71105
    Phone: (318) 629-0014
    Fax: (318) 404-1571
    nikki@cbbd.law

*Attorneys for Defendants, the City of Shreveport*