UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **TEXAS REGIONAL LANDFILL COMPANY, LP, WASTE CONNECTIONS BAYOU, INC., and WASTE CONNECTIONS OF LOUISIANA, INC.** | **Civil Action No. 5:26-cv-329** |
| **Plaintiffs,** | |
| **v.** | **DISTRICT JUDGE HICKS** |
| **CITY OF SHREVEPORT,** | |
| **Defendant** | **MAGISTRATE JUDGE HORNSBY** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... i

I.    INTRODUCTION .................................................................................. 1

II.   STANDARD OF REVIEW ................................................................... 4

III.  THE CITY'S MOTION IGNORES KEY FACTUAL ALLEGATIONS ................ 5

   A.    For over three decades, Shreveport's Flow Control Law correctly exempted waste exported out-of-state from flow control. ........................................................... 6

   B.    Prompted by private interests seeking to hoard more waste to increase their revenues, the City eliminated the Out-of-State Disposal Exemption. .................... 7

   C.    Private interests are entrenched within the City's waste management system and influenced the City's elimination of the Out-of-State Disposal Exemption to increase their revenues............................................................................. 7

IV.   ARGUMENT..................................................................................... 10

   A.    The City's reliance on alternative facts outside of the Complaint demonstrates its motion must be denied. .................................................... 10

   B.    The Complaint plausibly alleges the Flow Control Law functions as an Export Ban that hoards waste for local private beneficiaries...................................... 12

      1.   *Carbone* controls where private influence and private benefit are plausibly alleged, not *United Haulers*. ................................................................. 12

      2.   Plaintiffs plausibly allege discrimination against interstate commerce in both purpose and effect............................................................................ 17

   C.    Plaintiffs also state a *Pike* claim for a disproportionate burden on interstate commerce. 21

V.    CONCLUSION.................................................................................. 23

# TABLE OF AUTHORITIES

*Cases*

*A.B. Coker, Inc. v. Foti*,
  No. CIVA 05-1372, 2006 WL 3307445 (W.D. La. Nov. 9, 2006) ...................................... 4

*Allstate Ins. Co. v. Abbott*,
  495 F.3d 151 (5th Cir. 2007) ...................................................................................... 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................... 4, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................4, 5, 11

*C & A Carbone, Inc. v. County of Rockland ("Carbone II")*,
  No. 08 Civ. 6459, 2014 WL 1202699
  (S.D.N.Y. Mar. 24, 2014) .................................................................................. 14, 14

*C & A Carbone, Inc. v. Town of Clarkstown*,
  511 U.S. 383 (1994).............................................................. 1, 2, 12, 15, 16, 17

*Camreta v. Greene*,
  563 U.S. 692 (2011)....................................................................................................... 15

*Chem. Waste Mgmt., Inc. v. Hunt*,
  504 U.S. 334 (1992)....................................................................................................... 13

*Dean Milk Co. v. City of Madison*,
  340 U.S. 349 (1951)....................................................................................................... 18

*Dickerson v. Bailey*,
  336 F.3d 388 (5th Cir. 2003)....................................................................................... 18

ii

*Doe v. Hillsboro Indep. Sch. Dist.*,
    81 F.3d 1395 (5th Cir. 1996) ........................................................................................ 5

*Dow Constr., LLC v. BPX Operating Co.*,
    564 F. Supp. 3d 479 (W.D. La. 2021) ........................................................................ 5

*Flores v. FS Blinds, L.L.C.*,
    73 F.4th 356 (5th Cir. 2023) ...................................................................................... 15

*Florida Transp. Serv., Inc. v. Miami-Dade Cnty.*,
    757 F. Supp. 2d 1260 (S.D. Fla. 2010) ...................................................................... 15

*Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Nat. Res.*,
    504 U.S. 353 (1992) ................................................................................................... 13

*Gibbons v. Ogden*,
    22 U.S. 1 (1824) ......................................................................................................... 23

*Harrington v. State Farm Fire & Cas. Co.*,
    563 F.3d 141 (5th Cir. 2009) ....................................................................................... 5

*Hunt v. Washington State Apple Advertising Comm'n*,
    432 U.S. 333 (1977) ................................................................................................... 18

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ....................................................................................... 4

*Lewis v. Fresne*,
    252 F.3d 352 (5th Cir. 2001) ....................................................................................... 4

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ................................................................... 4

*Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*,
389 F.3d 491 (5th Cir. 2004) ......................................................... 19, 18

*NextEra Energy Cap. Holdings, Inc. v. Lake*,
48 F.4th 306 (5th Cir. 2022) ....................................................... 3, 11, 20

*Oregon Waste Sys., Inc. v. Dept. of Env't Quality of Or.*,
511 U.S. 93 (1994) ................................................................................ 13

*Philadelphia v. New Jersey*,
437 U.S. 617 (1978) .............................................................................. 13

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970) ........................................................ 3, 10, 18,  21, 22

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) .............................................................. 11

*Southern Waste Systems, LLC v. City of Coral Springs*,
687 F. Supp. 2d 1342 (S.D. Fla. 2010) ................................................ 15

*Tryko Holdings, LLC v. City of Harrisburg*,
429 F. Supp. 3d 12 (M.D. Pa. 2019) .................................................... 16

*Turner v. Pleasant*,
663 F.3d 770 (5th Cir. 2011) ................................................................. 5

*Turtle Island Foods Inc. v. Abbott*,
No. 1:23-CV-1032-DII, 2024 WL 5659990
(W.D. Tex. Sept. 23, 2024) ......................................................................................... 12

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
550 U.S. 330 (2007) ...................................................... 1, 5, 10, 12, 13, 14, 15, 17

*Vill. of Arlington Heights v. Metropolitan Housing Dev. Corp.*,
429 U.S. 252 (1977) .................................................................................................... 19

*W. Lynn Creamery, Inc. v. Healy*,
512 U.S. 186 (1994) ............................................................................................... 12, 17

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
945 F.3d 206 (5th Cir. 2019) ...................................................................................... 12

*Waste Connections of Kansas, Inc. v. City of Bel Aire*,
191 F. Supp. 2d 1238 (D. Kan. 2002) ......................................................................... 15

**Federal Statutes**

42 U.S.C. § 1983 ............................................................................................................... 4

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................ 1, 3, 4, 5, 9, 10, 13, 15, 22

## I.    INTRODUCTION

Defendant City of Shreveport ("the City" or "Shreveport") moves to dismiss a complaint Plaintiffs did not file. Plaintiffs' lawsuit does not challenge Shreveport's longstanding waste management program. Instead, Plaintiffs seek relief from the City's recent actions to dramatically alter the program by barring Plaintiffs' export of waste to Texas for disposal, for the benefit of private parties favored by the City. The City's ordinance and actions, taken at the behest and for the economic benefit of private interests that already dominate the local waste market, violate Plaintiffs' right to engage in interstate commerce secured by the Commerce Clause of the U.S. Constitution.

Rather than accept the Complaint's allegations as true as Fed. R. Civ. P. 12(b)(6) mandates, the City's motion recasts this case as a flow control dispute governed by *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330 (2007). To the contrary, Plaintiffs' case is based on the Supreme Court's *Carbone* decision, which found unconstitutional solid waste flow control for the benefit of the "favored local operator." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 389 (1994). The three Plaintiffs—waste companies involved in interstate commerce in solid waste management—have pled facts that demonstrate a violation of the Dormant Commerce Clase consistent with *Carbone* and similar cases. Indeed, Shreveport's brief never even mentions *Carbone,* makes a policy argument for flow control, and overlooks that Plaintiffs have pled that the City's ordinance and actions discriminate against interstate commerce.

For decades, Shreveport required locally collected waste to be disposed of at a Shreveport area landfill (the "Republic Woolworth Landfill") but made an exception for waste transported out-of-state for disposal ("Out-of-State Disposal Exemption" or "Exemption"), which protected interstate commerce and satisfied the requirements of *Carbone* and other cases. Plaintiffs' Complaint (Dkt. No. 1) ("Compl.") ¶ 15. Plaintiffs challenge the City's recent decision—prompted by, and advancing, private interests—to eliminate the Exemption and impose flow control on interstate commerce. Compl. ¶¶ 16-17. Although the Republic Woolworth Landfill is nominally City-owned, it is operated by a subsidiary of Republic Services, Inc. ("Republic"), the nation's second largest waste company, which dominates operations of the Republic Woolworth Landfill and receives revenue on every ton of waste accepted at the landfill. Compl. ¶¶ 14, 31-35. Republic is also the largest private waste hauler in the City, reinforcing its influence over the local waste market. Compl. ¶ 39.

Eliminating the Out-of-State Disposal Exemption directly benefits Republic by forcing Plaintiffs to dispose of waste at the Republic Woolworth Landfill, rather than their preferred and cost-effective East Texas Regional Landfill near Henderson, Texas. Compl. ¶¶ 26-28. Other private actors benefit as well. River Cities Disposal Company, Inc. ("River Cities") receives ten percent (10%) of Republic's tipping fee revenues, and its principal, Scott Pernici, appears to be a driving force behind the City's decision to remove the Out-of-State Disposal Exemption and enforce flow control against Plaintiffs. Compl. ¶ 38.

2

The City largely ignores the legal sufficiency of the Complaint's detailed allegations and instead contests them, which is not a basis for dismissal. Shreveport's arguments that its flow control system is sound and constitutional skirt the issue here of whether a constitutional claim has been pled. The City's contention that the Republic Woolworth Landfill is a public facility operating solely for the public benefit is at best a summary judgment argument that will have to be supported by evidence.

The Complaint robustly pleads that the City's decision to eliminate the Out-of-State Disposal Exemption erodes competition in the waste services market, burdens Shreveport customers with higher collection prices, and leaves no meaningful choice in waste management services. In addition to expressly and illegally discriminating against out-of-state disposal options, the City's actions place an undue burden on interstate commerce in solid waste. Any asserted local benefits are questionable and insubstantial compared to the direct burdens placed on interstate commerce. At minimum, the City's disagreement with Plaintiffs' allegations raises factual issues that must be evaluated under the Supreme Court's *Pike v. Bruce Church* analysis and may not be resolved on the pleadings based on the City's counter-allegations. *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) (where a nondiscriminatory law imposes incidental burdens on interstate commerce, courts must balance the putative local benefits against the burden on commerce). The Fifth Circuit recently emphasized that Dormant Commerce Clause claims requiring factual development, as is the case here, may not be dismissed at the pleadings stage. *See NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 327 (5th Cir. 2022) (reversing district court 12(b)(6) dismissal of Dormant Commerce Clause claim).

The City's flow-control scheme is the type of protectionist and discriminatory measure prohibited for over two centuries by the Dormant Commerce Clause and is actionable under 42 U.S.C. § 1983. Plaintiffs have stated a claim and the motion to dismiss should be denied.

## II.    STANDARD OF REVIEW

While shunning its application, Shreveport correctly states the standard of review for a Rule 12(b)(6) motion. The Fifth Circuit has repeatedly emphasized the high bar for dismissal. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (reversing dismissal of claim where enough facts were alleged to "raise a reasonable hope or expectation that discovery will reveal evidence" supporting the elements of the claim); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (on motion to dismiss court must view factual allegations "in the light most favorable to the plaintiff."). "All questions of fact and *any ambiguities in the current controlling substantive law* must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) (emphasis added) (burden is on the Defendant to show that the claim is baseless by demonstrating that "there is no possibility that plaintiff would be able to establish a cause of action.").

Plaintiffs' allegations thus need only "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also A.B. Coker, Inc. v. Foti*, No. CIVA 05-1372,

2006 WL 3307445 (W.D. La. Nov. 9, 2006) (Hicks, J.) (emphasizing "high standard required" for Rule 12(b)(6) dismissal and rejecting magistrate's recommendation to dismiss the plaintiff's Commerce Clause claims at the pleading stage). The "issue is not whether a plaintiff will ultimately prevail but whether [it] is entitled to offer evidence to support [its] claims." *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401-02 (5th Cir. 1996) (court may dismiss a complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge . . . that the plaintiff will fail to find evidentiary support for his allegations." *Twombly*, 550 U.S. at 556, 563 n.8.

Because of this, Rule 12(b)(6) motions are "viewed with disfavor and [are] rarely granted." *Dow Constr., LLC v. BPX Operating Co.*, 564 F. Supp. 3d 479, 483 (W.D. La. 2021) (denying partial motion to dismiss where plaintiff sufficiently alleged ownership interest in mineral lease) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)); *see also Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (reversing district court's dismissal of case where plaintiffs plausibly alleged facts, which if proven, would be a basis not to enforce challenged judgment).

The Complaint readily meets this standard.

## III.    THE CITY'S MOTION IGNORES KEY FACTUAL ALLEGATIONS

Shreveport's motion fails to even acknowledge the plausible and specific allegations that are integral to Plaintiffs' claims. The Complaint sets forth a textbook

Dormant Commerce Clause claim consistent with ample precedent and is not facially precluded by *United Haulers* or any other case.

### A. For over three decades, Shreveport's Flow Control Law correctly exempted waste exported out-of-state from flow control.

Shreveport regulates the collection and disposition of municipal solid waste generated within the City through Chapter 74 of the Shreveport Code of Ordinances, including the Flow Control Law codified in Section 74-52.1. Compl. ¶ 10. Since 1993, the law mandated that solid waste collected from businesses, hospitals, schools, and other institutions in the City be disposed of at the Republic Woolworth Landfill. Compl. ¶ 11. The 1993 version of the law recognized constitutional constraints on regulating interstate commerce by incorporating the Out-of-State Disposal Exemption. *Id*. Specifically, Section 74-52.1(e) exempted from the flow control requirements "any solid waste and rubbish disposed of outside of the State of Louisiana." Compl. ¶ 15.

For eight years, Plaintiff Waste Connections Bayou, Inc. ("Waste Connections Bayou") has collected municipal solid waste from commercial and institutional customers (e.g., businesses, offices, schools, and hospitals) in Shreveport and delivered that waste to Plaintiff Waste Connections of Louisiana, Inc.'s transfer station in Bossier City for temporary consolidation. Compl. ¶ 25. A third-party hauler then transports the consolidated waste across state lines to Plaintiff Texas Regional Landfill Company, LP's landfill (the "East Texas Regional Landfill") near Henderson, Texas, for disposal. Compl. ¶ 26. The Plaintiffs' use of the East Texas Regional Landfill enables Plaintiffs to provide Shreveport customers lower cost disposal options and competitive pricing by avoiding the large tipping fee charged by the Republic Woolworth Landfill. Compl. ¶¶ 27-30.

**B.** **Prompted by private interests seeking to hoard more waste to increase their revenues, the City eliminated the Out-of-State Disposal Exemption.**

In 2021, however, the City, at the behest of or in close coordination with Republic and River Cities' principal, Scott Pernici, began looking for ways to compel Waste Connections Bayou and other haulers to deliver Shreveport waste to the Republic Woolworth Landfill instead of to less expensive out-of-state disposal facilities. Compl. ¶ 16. These efforts culminated on January 9, 2024, when the City amended the original flow control ordinance through the enactment of Ordinance No. 180 (as amended, the "Flow Control Law") to remove the Out-of-State Disposal Exemption.[1] Compl. ¶ 17.

Defendant's Flow Control Law was adopted with and has the intended and practical effect of forcing waste that otherwise would be exported out-of-state to be delivered to the Republic Woolworth Landfill. Compl. ¶¶ 17, 50, 58-66. At the January 9, 2024 City Council meeting, a council member made the City's objective explicit, stating that "*we can stop [the waste] from going to Texas*." Compl. ¶ 71 (emphasis added).

**C.** **Private interests are entrenched within the City's waste management system and influenced the City's elimination of the Out-of-State Disposal Exemption to increase their revenues.**

The Republic Woolworth Landfill is not merely a public facility performing a traditional government function, as the City's counter-allegations claim. Shreveport Motion to Dismiss at 2. Although the City owns the Republic Woolworth Landfill,

---

[1] Ordinance No. 180 was later determined to be ineffective at the time of its enactment because the City failed to publish the law in the City's official journal as required by law. Undeterred, the City published the notice twenty-one months later on October 19, 2025 in an effort to remedy that failure.  Compl.  ¶¶ 18-19, 52.

Republic operates and maintains the facility under a long-term services agreement that has been in place since 2003. Compl. ¶¶ 13, 31-34. The City's role is limited to a few administrative functions, while Republic performs all substantive landfill operations and exercises full operational control through its own managers, operators, mechanics, laborers, and other workers. Compl. ¶¶ 33-34. Republic also receives approximately fifty percent (50%) of the landfill's tip fee revenues. Compl. ¶ 35. River Cities, in turn, holds a marketing agreement entitling it to ten percent (10%) of Republic's share of those tip fee revenues. Compl. ¶ 38. The elimination of the Out-of-State Disposal Exemption thus increases the volume of waste required to be delivered to the Republic Woolworth Landfill and directly increases revenues flowing to Republic and River Cities. Compl. ¶¶ 44, 65-66.[2]

Republic is not simply the landfill operator; it benefits financially from flow control in other ways. Republic is the largest private hauler operating within the City, giving it a dominant local market position enhanced by the Flow Control Law. Compl. ¶ 39. Republic may further benefit from a volume-based discounted tipping fee at the Republic Woolworth Landfill that smaller competing haulers may be unable to obtain. Compl. ¶ 37. The Republic Woolworth Landfill is widely viewed in the market as a Republic facility. Compl. ¶¶ 40-42.

---

[2] Since filing the Complaint, Plaintiffs have learned through a public records request response that Republic's share likely is closer to 75% of the landfill's tip fee, and River Cities presumably receives 10% of that increased share of the revenue, reinforcing the extent of the private financial stakes in the Republic Woolworth Landfill and the need for discovery.

Scott Pernici and his company, River Cities, also have deep financial interests in the Republic Woolworth Landfill. Compl. ¶¶ 38, 54. The Complaint explains that Mr. Pernici has advocated for the City to enforce the Flow Control Law against Waste Connections Bayou and other haulers and to remove the Out-of-State Disposal Exemption. Compl. ¶ 38. More broadly, the Complaint has alleged the City's multi-year effort to capture waste otherwise destined for out-of-state disposal was undertaken at Mr. Pernici's instigation, with his influence, and at times under his direction. Compl. ¶¶ 38, 54.

On the Complaint's facts, the Flow Control Law therefore does not simply direct waste to a publicly owned site. It diverts waste from an existing interstate disposal stream to a facility operated for private profit by the dominant local hauler, while also generating revenue for River Cities, whose president helped drive both the enforcement effort and the removal of the Out-of-State Disposal Exemption. Compl. ¶¶ 31-39, 44, 54, 58, 65-66.

While the City may contest the Complaint's allegations, Plaintiffs represent that discovery will reveal more details of Republic and Mr. Pernici's involvement in and influence over the City's waste management system, including control over Republic Woolworth Landfill's operations, setting of waste disposal tip fees, removal of the Out-of-State Disposal Exemption and flow of landfill generated revenues to Republic and River Cities. It is telling that neither River Cities nor Mr. Pernici is mentioned in the City's motion, while Republic itself only garners minimal discussion. Similarly, the City fails to address in any substantive terms the burdens its actions place on interstate

commerce and on Plaintiffs and their customers in Shreveport, who are entitled to receive cost-effective waste disposal services driven by competitive interstate markets.

## IV.    ARGUMENT

### A.    The City's reliance on alternative facts outside of the Complaint demonstrates its motion must be denied.

Shreveport's motion to dismiss impermissibly resorts to pleading alternative facts, essentially acknowledging that the Complaint makes a prima facie case that survives a motion to dismiss. A motion to dismiss is limited to the facts alleged in the complaint. *See C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 660 (5th Cir. 2016) ("a Rule 12(b)(6) motion typically cannot rely on evidence outside the complaint."). The City's motion does not explain how Plaintiffs' allegations do not ***state*** a claim under the Dormant Commerce Clause, and instead relies on its own counter-allegations to assert that Plaintiffs do not ***have*** a claim. On a Rule 12(b)(6) motion, a defendant is not entitled to engage in a battle over competing factual allegations. When Defendant's counter-allegations are set aside, as they must be on a motion to dismiss, it is clear Defendant does not actually claim that the Complaint fails to: (1) allege jurisdiction; (2) provide a "short and plain statement"; or (3) demand relief. Nor does the City contend that Plaintiffs' claims fail to meet the "plausibility" requirements of *Iqbal* and *Twombly*.

Instead, the City asks the Court to hold that Plaintiffs' claims are barred as a matter of law because the Flow Control Law is constitutional under *United Haulers* and related authority so long as the designated landfill is publicly owned. While this simplistic view of Dormant Commerce Clause jurisprudence is incorrect, the Court cannot make that determination at the pleading stage. Doing so would require resolving,

10

pre-discovery, a fact-bound dispute about whether the Republic Woolworth Landfill is "public" for Dormant Commerce Clause purposes, particularly given how Republic is deeply embedded in the landfill's operations and finances, and City actions are driven by private interests. The City's conclusory assertion that the Republic Woolworth Landfill is "public" because the City is the nominal owner and retains some limited oversight function is not a basis for dismissal.[3]

*Twombly* teaches that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. Plaintiffs' allegations adequately allege that private involvement in the City's waste management operations is pervasive, the City's actions to eliminate the Out-of-State Disposal Exemption and enforce flow control against an out-of-state landfill were driven by private interests, and those same private interests are reaping the financial rewards; therefore, Plaintiffs are entitled to discovery. The Fifth Circuit's *NextEra* decision explained the need for discovery in Dormant Commerce Clause cases. 48 F.4th at 327. "Apart from what we have said about general Commerce Clause principles, pleadings-stage dismissal of these claims was premature. Claims that

---

[3] Citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), the City argues "[d]ismissal under Rule 12(b)(6) is also 'appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.'" Shreveport Motion to Dismiss at 4. *Ramming* dismissed a claim on statute of limitations grounds based on the court's application of an accrual date and tolling period to the asserted claim. Here, multiple material facts are in dispute, including the degree of private control over and financial interest in the landfill, and private interests' role in the City's actions. The timing of the filing of Plaintiffs' action is not in dispute. In addition, Plaintiffs' claim under *Pike v. Bruce Church* requires a fact-driven assessment balancing the local benefits against the burden on commerce. *See* Section IV(C), *infra*. These issues cannot be determined on a motion to dismiss.

11

turn on intent and effects typically require factual development." *Id*. *See also W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 201 (1994) (Commerce Clause claims require a "sensitive, case-by-case analysis of purposes and effects").[4]

The only question before the Court is whether the Complaint alleges facts that, accepted as true and with all reasonable inferences drawn in Plaintiffs' favor, state plausible claims for relief. This motion is not a vehicle to test proof or impose the evidentiary burdens of summary judgment or trial. Plaintiffs' allegations provide fair notice of the bases for their claims and, at this stage, more than satisfy Rule 8 and the plausibility standard.

### B. The Complaint plausibly alleges the Flow Control Law functions as an Export Ban that hoards waste for local private beneficiaries.

#### 1. *Carbone* controls where private influence and private benefit are plausibly alleged, not *United Haulers*.

*United Haulers* does not provide the bright-line safe harbor Shreveport asserts— the City overreads the reach of the decision. The Supreme Court upheld flow control laws in *United Haulers* because they "benefit a clearly public facility, ***while treating all private companies exactly the same***." *United Haulers,* 550 U.S. at 342 (emphasis added) The Court repeatedly described the designated facilities in the case as public facilities that were "***owned and operated***" by a public entity. *Id*. at 334, 357 (emphasis added).

---

[4] The Fifth Circuit has held that discriminatory intent is a factual matter. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 945 F.3d 206 (5th Cir. 2019); *see also Turtle Island Foods Inc. v. Abbott,* No. 1:23-CV-1032-DII, 2024 WL 5659990, at \*11 (W.D. Tex. Sept. 23, 2024) ("Because both discriminatory claims and excessive burden claims 'turn on intent and effects,' they require factual development.") (*citing NextEra Energy Cap. Holdings* and *W. Lynn Creamery*).

That factual predicate matters because *United Haulers* draws a doctrinal line between laws that favor "local government" and laws that favor "private industry." *Id*. at 337. The Court explained that it "does not make sense" to view those categories "with equal skepticism," because favoritism for in-state private businesses is often "simple economic protectionism" warranting rigorous scrutiny, while laws favoring local government can serve "legitimate goals unrelated to protectionism." *Id*. at 363.

Critical to this case, *United Haulers* did not overrule the Court's 1994 *Carbone* decision, which is closer to the facts here. *Carbone* decisively ruled that flow control that discriminates against interstate commerce in solid waste to the advantage of in-state market participants violates the Dormant Commerce Clause. "State and local governments may not use their regulatory power to favor local enterprise by prohibiting patronage of out-of-state competitors or their facilities." *Carbone*, 511 U.S. at 394. *Carbone* is part of a long line of Supreme Court Dormant Commerce Clause precedent striking down local laws that discriminate against interstate commerce in solid waste. *See Philadelphia v. New Jersey,* 437 U.S. 617 (1978); *Chem. Waste Mgmt., Inc. v. Hunt,* 504 U.S. 334 (1992); *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Nat. Res.,* 504 U.S. 353 (1992); *Oregon Waste Sys., Inc. v. Dept. of Env't Quality of Or.,* 511 U.S. 93 (1994).

The Complaint shows that while the City may nominally own the Republic Woolworth Landfill, private interests dominate its operations and reap the benefits of its revenues, and those same private interests have driven the City's push to hoard more waste, to their further advantage. The landfill therefore largely functions as a private

13

facility. Those allegations go directly to which side of *United Haulers'* line this case falls on.

Courts have rejected the notion that *United Haulers* resolved the "private operation" question in the categorical way the City suggests. For example, in *C & A Carbone, Inc. v. County of Rockland* ("*Carbone II*"), heavily relied on by the City, the district court explained that the broader question whether flow control remains suspect when the designated facility is privately operated "was simply not before the Supreme Court [in *United Haulers*], so there was no need for the majority to reach it at all." No. 08 Civ. 6459 (ER), 2014 WL 1202699, at *7 (S.D.N.Y. Mar. 24, 2014). *Carbone II* further observed that the factual posture of *United Haulers* materially changed by the time it reached the Supreme Court, so the Court had no occasion to address private operation. *Id*.

The facts in *Carbone II*, a single out-of-circuit, unpublished district court case, do not speak to the circumstances alleged here, but the facts as developed through discovery are obviously necessary here—even *Carbone II* was decided on summary judgment after discovery, not a Rule 12(b)(6) motion to dismiss. This case involves allegations that the City deliberately extinguished a decades-long established interstate outlet for Shreveport waste and redirected that waste to a single local landfill in order to confer a concrete economic benefit on private parties who operate the facility and have an overwhelming share in the resulting revenues. Those allegations present a fundamentally different case

from one involving routine public waste regulation untethered to the capture of an existing interstate waste stream for private gain.[5]

Similarly, Defendant's reliance on *Waste Connections of Kansas, Inc. v. City of Bel Aire*—another out-of-circuit district court case—is misplaced. 191 F. Supp. 2d 1238 (D. Kan. 2002). There, the court upheld a city's decision to hire a private entity to perform municipal recycling services and the challenged ordinance did not attempt to impose control over the flow of recyclable material either within or beyond the City. Here, by contrast, Plaintiffs challenge Section 74-52.1 as a regulatory measure that eliminates the Out-of-State Disposal Exemption and prohibits an existing interstate disposal stream. That distinction makes *City of Bel Aire* inapposite.

Post-*United Haulers* cases consistently preserve *Carbone's* scrutiny when favored private entities receive local benefits. *Florida Transp. Serv., Inc. v. Miami-Dade Cnty.*, 757 F. Supp. 2d 1260, 1282 n.22 (S.D. Fla. 2010) (*United Haulers* did not disturb *Carbone* "with respect to laws favoring private entities."); *see also Southern Waste Systems, LLC v. City of Coral Springs*, 687 F. Supp. 2d 1342, 1361 (S.D. Fla. 2010) (decision on summary judgement following discovery; *United Haulers* merely means "under this public-private distinction" a local ordinance "will not be subject to *per se* invalidity if the ordinance requires both local and out-of-state haulers to deliver all waste to a publicly [sic.] owned facility," and recognizing *Carbone* "involved a private

---

[5] *Carbone II* is non-binding here. The Fifth Circuit recently reiterated that "a decision of a federal district court is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 364 n.4 (5th Cir. 2023) (*quoting Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)).

business entity receiving the favored local benefits."); *Tryko Holdings, LLC v. City of Harrisburg*, 429 F. Supp. 3d 12, 30 (M.D. Pa. 2019) (*Carbone's* rigorous scrutiny applies to regulations that favor private waste disposal sites, while *United Haulers* applies to laws directing waste to facilities "owned *and* operated by a state-created public benefit corporation."). *Carbone* therefore remains the framework for assessment under the Dormant Commerce Clause where flow control "deprive[s] competitors, including out-of-state firms, of access to a local market." *Carbone,* 511 U.S. at 386.

Plaintiffs allege the Republic Woolworth Landfill's operation and economic benefits are not "clearly public," as *United Haulers* mandates, and allege and are prepared to prove much more than that. *United Haulers*, 550 U.S at 342. Plaintiffs allege that Republic performs all substantive landfill operations, receives approximately fifty percent (50%) of tip fees, and that River Cities receives a contractual share tied to Republic's share, so the economic upside of compelled tonnage flows directly to private actors.[6] Compl. ¶¶ 33–35. Plaintiffs also show the amendment was adopted as a concerted, targeted effort to stop waste "from going to Texas," and to capture the waste stream for the benefit of those private interests. Compl. ¶¶ 16–17, 71. Plaintiffs further allege that Republic and Scott Pernici were the driving force behind the amendment and stand to benefit directly from the increased captive waste stream. Compl. ¶¶ 35-38, 54, 65.

---

[6] As noted above, Plaintiffs have recently learned Republic's share of the tip fee revenue is closer to 75%.

On those allegations, the City cannot convert public ownership—one factor in the analysis of who benefits from the discrimination—into a dispositive Rule 12(b)(6) shortcut. Whether the Flow Control Law confers the kind of favored local benefits on private entities that triggers *Carbone*, rather than the "clearly public" model in *United Haulers*, is a fact-bound question that cannot be resolved on the pleadings.

2.  **Plaintiffs plausibly allege discrimination against interstate commerce in both purpose and effect.**

A Dormant Commerce Clause claim turns on a "sensitive, case-by-case analysis" of fact issues, including the "purposes and effects" of the law at issue. *See, e.g., W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 201 (1994) (state tax-and-subsidy scheme favoring in-state dairy producers violates the Dormant Commerce Clause). While certain discriminatory measures can be determined to be *per se* invalid on their face, the nature of the market and the practical effect of the law typically cannot be decided until after an evidentiary record is developed. *United Haulers,* 550 U.S. at 337 (Dormant Commerce Clause decision based on record built after "protracted discovery"). Indeed, the City's arguments rest on its own counter-allegations of fact instead of accepting Plaintiffs' allegations, which include how the Republic Woolworth Landfill actually operates and the extent of private operational control and tip-fee revenue sharing—all as stated in the Complaint.

The City also ignores the long history of courts striking down laws protecting incumbent local monopolies by limiting competition from non-local businesses in interstate commerce. *Carbone*, 511 U.S. at 392 (although the ordinance favored only "a single local proprietor," that fact "just makes the protectionist effect of the ordinance

17

more acute"); *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354 (1951) (striking down "an economic barrier protecting a major local industry against competition from without the State"). Dormant Commerce Clause jurisprudence holds that laws with a protectionist and discriminatory effect are reviewed under the strict scrutiny standard. *See Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 353 (1977) (when a law discriminates against interstate commerce, "the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake."); *see also Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*, 389 F.3d 491 (5th Cir. 2004) (a state law discriminating against interstate commerce on its face invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives).[7]

Courts have routinely found flow control laws facially discriminatory because they allow "only the favored operator to process waste." *Carbone*, 511 U.S. at 391. The City's law suffers from the same defect. By eliminating the Out-Of-State Disposal Exemption and forcing more Shreveport waste to be delivered to the Republic Woolworth Landfill, the Flow Control Law secures the economic benefits of waste disposal— including tipping fee revenues—for the favored local operator. Such laws "squelch[] competition in the waste-processing service altogether, leaving no room for investment from outside." *Id.* at 392. Defendant cites no Fifth Circuit authority that upholds a law

---

[7] Under this strict scrutiny, the state bears the heavy burden to rescue its statutes, and the statute at issue is generally struck down without further inquiry. *Pine Belt*, 389 F.3d at 497 (*quoting Dickerson v. Bailey*, 336 F.3d 388, 396 (5th Cir. 2003).

that hoards waste in this manner for the benefit of a facility that is not a "clearly public" facility.[8]

When determining whether there is purposeful discrimination in violation of the Dormant Commerce Clause, the Supreme Court has identified the following factors as relevant: (1) whether a clear pattern of discrimination emerges from the effect of the state action; (2) the historical background of the decision, which may take into account any history of discrimination by the decision-making body; (3) the specific sequence of events leading up to the challenged decision, including departures from normal procedures; and (4) the legislative or administrative history of the state action, including contemporary statements by decisionmakers. *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007) (*citing Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266-268 (1977)). Here, these factors are met for purposes of defeating the City's motion, as the state action results in discrimination against out-of-state business interests and the historical background reveals that the Out-of-State Disposal Exemption was specifically in place to prevent this blatant discrimination; further, the City's enactment of Ordinance No. 180 demonstrates a "departure from normal procedures."

---

[8] To the extent Defendant may rely on *Pine Belt,* 389 F.3d at 501-03, the ordinances at issue there did not terminate any existing practice of sending waste from the regulated region to out-of-state landfills. Here, by contrast, Plaintiffs allege that the City eliminated a longstanding exemption that had allowed Shreveport waste to be exported for disposal in Texas, specifically to stop that existing interstate flow and divert the waste to a local landfill, benefiting other private parties. Further, the plaintiffs in *Pine Belt* did not export waste out-of-state and therefore did not have standing to challenge the law as facially discriminatory. Instead, the case was decided under the *Pike* balancing test based on a full trial record.

For more than thirty years, the City operated a flow control regime that expressly exempted waste "disposed of outside of the State of Louisiana." Compl. ¶¶ 11, 15. The City thus long accepted the interstate movement of Shreveport waste and changed course only when it sought to remove that Out-of-State Disposal Exemption in January 2024 at the prodding of local competitors to Plaintiffs. Compl. ¶¶ 15-17. The Complaint alleges the amendment was adopted with the intended and practical effect of forcing waste that otherwise would be exported to Texas to be delivered instead to the Republic Woolworth Landfill. Compl. ¶ 17. It also alleges direct evidence of that purpose: when Ordinance No. 180 was enacted, a councilmember confirmed that its purpose was to "stop [the waste] from going to Texas" and that he was "happy about that." Compl. ¶¶ 56, 71. That is more than enough at the pleading stage to plausibly allege a targeted effort to halt interstate disposal and show purposeful discrimination. *See NextEra Energy Cap. Holdings*, 48 F.4th at 327 (when Plaintiff raises plausible allegations that a law had a discriminatory purpose, the claim proceeds to discovery).

The Complaint also plausibly pleads discriminatory effect and private favoritism the City's motion ignores. Plaintiffs allege an existing interstate disposal chain through which Shreveport waste is collected, consolidated at the Bossier City transfer station, and transported to the East Texas Regional Landfill for disposal. Compl. ¶¶ 21-26. By eliminating the Out-of-State Disposal Exemption, the City shut down that interstate pathway and forced the waste to a single in-state, privately run facility instead. Compl. ¶¶ 17, 58-64. The Complaint further alleges that the Republic Woolworth Landfill is operated by Republic, that Republic receives approximately fifty percent (50%) of tip-fee revenues, that River Cities receives ten percent (10%) of Republic's share, that Republic

is also the largest private hauler in the City, and that Scott Pernici pushed the City to remove the Out-of-State Disposal Exemption and enforce flow control against Plaintiffs. Compl. ¶¶ 31-39, 44, 54, 65-66. Accepting those allegations as true, the ordinance does not simply support a public waste system. It diverts waste from interstate commerce to a facility whose operations and revenues substantially benefit favored private local interests. Compl. ¶¶ 31-39, 44, 54, 56, 65-66, 71.

The Out-of-State Disposal Exemption placed the City's Flow Control Law on a sound Constitutional footing for over three decades; Plaintiffs' allegations sufficiently support a claim that its elimination and the City's actions violate the Dormant Commerce Clause.

**C.    Plaintiffs also state a *Pike* claim for a disproportionate burden on interstate commerce.**

Under long standing Supreme Court precedent, even where a law is not discriminatory on its face, in purpose or in effect, it is unconstitutional if its burden on commerce is "clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. This analysis usually implicates fact issues that cannot be resolved on the pleadings: "If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id*. Assessing the disproportionality of such burden precludes resolution through a motion to dismiss.

The Complaint alleges substantial burdens extending from their Shreveport customers to a landfill in Texas that will lose business. For years, Plaintiffs operated an

21

established interstate disposal chain under which waste collected in Shreveport was transported to the Bossier City Transfer Station, consolidated there, and then hauled across state lines by a local transportation company for disposal at the East Texas Regional Landfill. Compl. ¶¶ 21-26. The City's amendment shuts down that interstate waste export by removing the Out-of-State Disposal Exemption that the City had in place for more than thirty years and forcing that waste to a single in-state, privately operated landfill instead. Compl. ¶¶ 15, 17, 98, 102, 197, 201. That forced diversion requires Waste Connections Bayou to reroute loads, change its disposal practices, and incur higher disposal costs. Compl. ¶¶ 217, 223, 225. It also deprives the Bossier City Transfer Station of its intended use for lawful interstate shipment, resulting in stranded capacity, disrupted operations, and interference with outbound transport and disposal arrangements. Compl. ¶¶ 114, 116, 119-123, 219. And it reduces inbound tonnage at the East Texas Regional Landfill, impairing Texas Regional Landfill's interstate commercial operations and capacity utilization. Compl. ¶¶ 118, 122, 221, 227.

The Complaint further alleges that the asserted local benefits are, at best, marginal, mostly for the benefit of private interests, and sharply contested. Plaintiffs allege that the City long maintained a fully functional flow control system while allowing out-of-state disposal, which undermines any suggestion that eliminating interstate disposal was necessary to support municipal waste services. Compl. ¶¶ 90, 98, 239. Plaintiffs also allege that forcing additional waste to the Republic Woolworth Landfill will leave Shreveport customers with higher collection prices and less choice, not better service. Compl. ¶¶ 126, 128, 130, 191, 225, 237. And the Complaint alleges that the Republic Woolworth Landfill itself has experienced fires, smoke impacts, long wait

22

times, and other operational problems that will be exacerbated by forcing additional waste to the facility. Compl. ¶¶ 185-191.

At minimum, these well-pled facts plausibly establish that the burdens on interstate commerce are excessive in relation to any putative local benefit, and that claim cannot be dismissed on the pleadings.

## V.    CONCLUSION

Plaintiffs in this lawsuit seek to vindicate for themselves and their Shreveport customers the core constitutional right to untrammeled interstate commerce. Over 200 years ago in *Gibbons v. Ogden*, 22 U.S. 1 (1824), Chief Justice Marshall articulated the constitutional guarantees of a national economy and struck down a New York effort to monopolize steamboat traffic. Courts time and again have applied these principles to protect commerce in solid waste management and disposal, a vital part of the nation's infrastructure. The Complaint follows that long tradition and meets all criteria for stating a claim, supporting denial of the City's motion.

Plaintiffs plausibly allege that the City abandoned a decades-long policy permitting interstate disposal and instead enacted a protectionist measure designed to capture waste for a facility whose operations and revenues substantially benefit favored local private interests. Accepting those allegations as true—as Rule 12(b)(6) requires— the City's Flow Control Law functions as precisely the type of economic protectionism the Dormant Commerce Clause forbids. The City's motion does not demonstrate any deficiency in Plaintiffs' pleading; it simply disputes the facts and asks the Court to adopt the City's competing narrative before discovery has even begun. That is not the purpose

of a motion to dismiss. Because Plaintiffs have plausibly alleged discrimination against

interstate commerce and a substantial burden on interstate commerce under *Pike*, the

Court should deny the motion and permit this case to proceed to discovery.

Dated: March 16, 2026

Respectfully submitted,

| | |
|---|---|
| James B. Slaughter (*pro hac vice*) | Christopher R. Handy (#38768) |
| Michael G. Murphy (*pro hac vice*) | Claire H. Carter (#41692) |
| BEVERIDGE & DIAMOND, P.C. | BRADLEY MURCHISON KELLY & SHEA |
| 1900 N Street, NW, Suite 100 | LLC |
| Washington, DC 20036 | 1100 Poydras Street, Suite 2700 |
| Telephone: (202) 789-6040 | New Orleans, LA 70163 |
| jslaughter@bdlaw.com | Telephone: 504-596-6300 |
| mmurphy@bdlaw.com | chandy@bradleyfirm.com |
| | ccarter@bradleyfirm.com |

AND

Leland G. Horton (#26928)
BRADLEY MURCHISON KELLY & SHEA
LLC
401 Edwards Street, Suite 1000
Shreveport, LA 71101
Telephone: (318) 227-1131
lhorton@bradleyfirm.com
*Attorneys for Waste Connections Bayou, Inc.,*
*Waste Connections Louisiana, Inc., and*
*Texas Regional Landfill Company, LP*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the above and foregoing motion has been served on counsel of record this 16th day of March, 2026 *via* the Court's CM/ECF system.

24