**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| TEXAS REGIONAL LANDFILL COMPANY, LP, ET AL. | CIVIL ACTION NO. 26-0329 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF SHREVEPORT | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss pursuant to Rule 12(b)(6) filed by Defendant City of Shreveport (the "City"). See Record Document 12. Texas Regional Landfill Company, LP, Waste Connections Bayou, Inc., and Waste Connections of Louisiana, Inc. (collectively, "Plaintiffs") have filed an opposition (Record Document 14), and the City replied (Record Document 15). For the reasons stated below, the Motion is **DENIED**.

**FACTUAL BACKGROUND**

Because this matter is before the Court on a motion to dismiss, the Court accepts all well-pleaded allegations contained in Plaintiffs' Complaint as true. See Record Document 1.

Plaintiffs allege that the City enacted an unconstitutional flow-control law that requires all municipal solid waste collected within the City to be disposed of at the Republic Woolworth Landfill ("Woolworth Landfill"). See id. at 1–2. Since 1993, the City has maintained some version of a flow-control ordinance requiring locally collected waste to be delivered to the Woolworth Landfill, but that the prior version of the ordinance contained an exemption permitting waste to be transported out of state for disposal. See id. at 3–4. That exemption allowed waste haulers to transport waste to facilities in

neighboring states, including Texas. See id. at 4. In January 2024, the City enacted Ordinance No. 180, which eliminated the out-of-state disposal exemption. See id. The law became effective when it was later published in October 2025. See id. at 5.

The removal of this exemption has the effect of requiring all waste collected within the City to be processed at the Woolworth Landfill and preventing transport of waste to out-of-state facilities. The Complaint alleges that, although the Woolworth Landfill is owned by the City, it is operated by BFI Waste Systems of Louisiana, LLC, a subsidiary of Republic Services, Inc. ("Republic"), a private corporation. See id. at 4. Plaintiffs allege that Republic performs all substantive landfill operations and receives a significant portion of the landfill's tipping fee revenues. See id. at 7. Plaintiffs also allege that another private entity, River Cities Disposal Company, Inc. ("River Cities"), receives a share of those revenues. See id. at 7–8.

Plaintiffs contend that the ordinance forces waste to be directed to a privately operated facility, increases costs, eliminates competition, and prevents Plaintiffs from transporting waste to out-of-state facilities, including a landfill in Texas that they previously utilized. See id. at 6–8. Based on these allegations, Plaintiffs assert that the ordinance violates the Dormant Commerce Clause by discriminating against and unduly burdening interstate commerce.

**LAW AND ANALYSIS**

I. **Applicable Standards**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings and requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To determine whether a complaint is

adequate under Rule 8(a)(2), courts now apply the "plausibility" standard established in Bell Atlantic Corp. v. Twombly, and its progeny. See 550 U.S. 544 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." See id. at 555–56. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding on a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, 981 F.2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as fact. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive. See id. at 678–79. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

## II.    Dormant Commerce Clause

The Commerce Clause gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. I, § 8, cl. 3. While the Commerce Clause is more frequently invoked as authority for federal legislation, there is also a dormant or negative aspect of the Clause that limits the

power of States to enact legislation that adversely affects interstate commerce. See Hughes v. Oklahoma, 441 U.S. 322, 326 (1979); see also Piazza's Seafood World, LLC v. Odum, 448 F.3d 744, 750 (5th Cir. 2006). The Dormant Commerce Clause's limitation on State power, however, "is by no means absolute." Lewis v. BT Inv. Mgrs., Inc., 447 U.S. 27, 36 (1980). In the absence of conflicting federal legislation, the States retain authority under their general police powers to regulate matters relating to the health, life, and safety of their citizens, even though interstate commerce may be affected. See id.; see also Huron Portland Cement Co. v. City of Detroit, Mich., 362 U.S. 440, 443-44 (1960).

To determine whether a state statute violates the Dormant Commerce Clause, the court conducts a two-tiered analysis. First, the court must determine whether the state statute facially discriminates against interstate commerce. See Oregon Waste Sys., Inc. v. Dept. of Environmental Quality, 511 U.S. 93, 99 (1994); see also Hughes, 441 U.S. at 336. In this context, "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually *per se* invalid." Oregon Waste, 511 U.S. at 99.

Second, if the regulation has only an "incidental effect" on interstate commerce, the Court must apply the balancing test derived from Pike v. Bruce Church, Inc., 397 U.S. 137 (1970). A nondiscriminatory regulation will generally be upheld unless "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." Id. at 142. "If a legitimate local purpose is found, then the question becomes one of degree." Id. "[T]he extent of the burden that will be tolerated will of course depend

4

on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." Id.

### III.  Carbone and United Haulers

The Supreme Court has addressed municipal flow-control ordinances in two principal cases. In C & A Carbone, Inc. v. Town of Clarkstown, the Court struck down an ordinance requiring all solid waste to be processed at a designated facility. See 511 U.S. 383, 3992 (1994). The Court held that the ordinance discriminated against interstate commerce because it deprived out-of-state competitors of access to the local market and "hoard[ed]" the processing of waste for a favored operator. See id.

In contrast, in United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth., the Court upheld flow-control ordinances directing waste to facilities owned and operated by a public entity. See 550 U.S. 330, 334, 342 (2007). The Court emphasized that laws favoring public entities performing traditional governmental functions, while treating private actors equally, do not constitute discrimination against interstate commerce. See id. at 342–45. Therefore, the Supreme Court's jurisprudence distinguishes between laws that favor private economic actors and those that favor public entities performing governmental functions.

### IV.  Analysis

At this stage, the Court's inquiry is limited to whether Plaintiffs have stated a plausible claim for relief. Defendant argues that the ordinance is constitutional under United Haulers because it directs waste to a publicly owned facility. See Record Document 12 at 2. However, Plaintiffs allege that the Woolworth Landfill is operated by a private corporation and that private entities receive substantial financial benefits from the

flow-control scheme. See Record Document 1 at 6–8. Based on those facts, Plaintiffs argue that the ordinance in this case is more like the one in Carbone and is therefore unconstitutional. See Record Document 14 at 19–24.

The Court is not persuaded that United Haulers establishes a categorical rule that public ownership alone renders a flow-control ordinance constitutional. Rather, United Haulers emphasized the public nature of the facility and the governmental function being performed. Here, Plaintiffs have plausibly alleged that private entities play a substantial role in the operation and financial structure of the landfill. See Record Document 1 at 6–8. Specifically, Plaintiffs allege that Republic performs all substantive landfill operations and receives a significant share of tipping fee revenues, and that River Cities also benefits financially from the tip fee revenue. See id. Accepting these allegations as true, the ordinance may function, in practical effect, for the benefit of private economic interests.

Plaintiffs' allegations regarding the City's amendment to the ordinance further underscore why dismissal at this stage is inappropriate. The Supreme Court has made clear that analyzing the Dormant Commerce Clause often requires a "sensitive, case-by-case analysis" of a law's purpose and practical effect. W. Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 201 (1994). Consistent with that approach, courts routinely consider the historical background of the challenged law and the sequence of events leading to its enactment.

Here, Plaintiffs allege that, for decades, the City maintained a flow-control regime that expressly permitted out-of-state disposal of waste, thereby allowing participation in interstate markets. See Record Document 1 at 3–4. However, the City reversed course in 2024 by eliminating that exemption, with the intended effect of forcing waste to the

Woolworth Landfill and preventing transport to out-of-state facilities. See id. Plaintiffs contend that the City was pressured by private forces that stood to benefit financially from increasing the volume of waste at the Woolworth Landfill. See id. at 7–8.

Accepting these allegations as true, the ordinance's historical development and alleged purpose are relevant to whether it functions as a protectionist measure favoring local interests at the expense of interstate commerce. These are factual inquiries that cannot be resolved on the pleadings alone.

At this stage, the Court lacks a sufficient factual record to determine whether the ordinance more closely resembles the unconstitutional regime in Carbone or the permissible framework in United Haulers. Resolution of that question will require factual development regarding the degree of private control, the allocation of economic benefits, and the practical effect of the ordinance on interstate commerce. Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Court finds that Plaintiffs have stated a plausible claim under the Dormant Commerce Clause.

**CONCLUSION**

Based on the reasons explained above, the City's Motion to Dismiss (Record Document 12) is **DENIED**.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 16th day of April, 2026.

JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT

7
